UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GABINO GENAO,

                                        Plaintiff,

                    -against-

CITY OF NEW YORK, MDC CAPTAIN
DILLARD, MDC ASSISTANT DEPUTY
WARDEN HARVEY, MDC CAPTAIN
DUNCAN-CHANDLER, MDC OFFICER
EVERSON, MDC OFFICER COLLYMORE,
CHRISTOPHER ALLEYNE, ANGELO
MORELLI, and OFFICER J. MASONE,

                                        Defendants.

20-CV-10573 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

      Incarcerated Plaintiff Gabino Genao brings this action for alleged violations of his First

and Fourteenth Amendment rights. He claims that jail officials failed to protect him and

subjected him to unlawful conditions of confinement. He also claims that the City of New York

is liable for some of this conduct based on their alleged failure to train officers. Plaintiff brings

this action against Defendants City of New York ("City"), the Manhattan Detention Complex

("MDC"), MDC Captain Dillard, MDC Assistant Deputy Warden ("ADW") Harvey,[1] MDC

Captain Duncan-Chandler, MDC Officer Everson, MDC Officer Collymore, Captain Alleyne,

MDC Maintenance Supervisor Angelo Morelli, and Officer Masone (the individual defendants

collectively the "Individual Defendants" and, together with the City, the "Defendants"). Pending

before the Court is Defendants' motion for summary judgement against Plaintiff's claims. For

the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

---

[1] Defendants' original motion referenced "ADW Harris" in lieu of "ADW Harvey," which
Defendants have since corrected. ECF No. 194 at n.1.

## BACKGROUND

### I.      Factual Background

On or around September 20, 2020, Plaintiff Gabino Genao arrived as a pre-trial detainee housed in the Manhattan Detention Complex ("MDC"). ECF No. 192-2 at 117:6–13. Plaintiff asserts that when he first arrived at his cell, he verbally complained to ADW Harvey that grease was leaking from the ceiling and that there was a mouse infestation in his cell. ECF No. 192-1 at 116:22–117:5. Over the course of two weeks, Plaintiff states that he made 100 verbal complaints. *Id.* at 118:1–6.

On October 18, 2020, at 5:49 p.m., Plaintiff submitted a 311 submission (the "311 Complaint"), wherein he stated that grease was leaking from his ceiling and that the smell was giving him a headache. ECF No. 185-2 at DEF3518. During the 311 Complaint, he further requested that the issue be fixed as soon as possible and that Plaintiff be seen at the clinic. *Id.* The same day, at 6:15 p.m., non-party DOC staff received an email notifying them of Plaintiff's complaint. ECF No. 187 (Joint Statement) ¶ 2. Later that evening, at 9:33 p.m., a non-party DOC staff member directed non-party DOC staff to "ensure that Plaintiff is seen at the clinic." *Id.* That same evening, Plaintiff was seen at the clinic because "his cell was liking [sic] and he has [a] headache." ECF No. 185-5. Plaintiff claims that his headache was caused by the smell from the leak in his cell, ECF No. 192-1 at 120:21–121:4, and offered no other complaints to the clinic staff. ECF No. 185-5. Plaintiff was prescribed 650 milligrams of Tylenol and directed to return to the clinic as needed. *Id.*

On October 22, 2020, Plaintiff was housed in MDC, 9 South, Cell 4 ("Cell 4"). Joint Statement ¶ 1. That day, ADW Harvey assigned Captain Dillard to Plaintiff's 311 Complaint. ECF No. 185-6 at 54:5–11. Captain Dillard testified that he was not aware of Plaintiff's

complaint prior to October 22, 2020. *Id.* at 52:15–18. Plaintiff claims that Captain Dillard antagonized Plaintiff for making the complaint, and that Captain Dillard directed Defendant Collymore to handle the complaint. ECF No. 192-1 at 169:19–25.

Also on October 22, 2020, Captain Duncan-Chandler went to Plaintiff's cell with the Supervisor of Maintenance[2] ("SOM"), Defendant Morelli. ECF No. 185-3[3] at 87:9–18, 88:21–25; ECF No. 192-5 at 71:21–25. Plaintiff asserts that Captain Duncan-Chandler knew of Plaintiff's issues with his cell for about a month prior to October 22, 2020. *See* ECF No. 192-1 at 109:5–10; 118:12–17. Upon Captain Duncan-Chandler and the SOM's inspection, it was determined that Plaintiff needed to be removed from Cell 4. ECF No. 192-5 at 71:8–11. Plaintiff asserts that the SOM knew that Cell 4 was inoperable for five years and falsified government documentation that the cell was operable when it was not. ECF No. 192-1 at 173:21–174:3.

At 11:29 a.m. on October 22, 2020, Captain Duncan-Chandler emailed her supervisors and security personnel that Plaintiff would need to stay out of Cell 4 for twenty-four hours, to allow the material used to repair the cell to dry. Joint Statement ¶ 7. Captain Allyne responded to the email instructing that Plaintiff should be transferred to Cell 8. *Id.* ¶ 8. Captain Duncan-Chandler then made Captain Alleyne aware that Cell 8 was already occupied, and it was determined that Plaintiff would be moved to Cell 7. Joint Statement ¶ 9, 10. The email correspondence communicating Plaintiff's move to Cell 7 came after a separate conversation outside of the email chain between Captains Duncan-Chandler and Alleyne. ECF No. 185-4 at

---

[2] The terms "Supervisor of Maintenance" and "Supervisor of Mechanics" are used interchangeably. *See* ECF No. 192-5 at 71:14-20.
[3] The deposition testimony refers to "Dunson-Chandler." The Court acknowledges this is Defendant Duncan-Chandler.

DEF3351. Later that day, between 1:00 p.m. and 1:30 p.m., Plaintiff was moved from Cell 4 to Cell 7. Joint Statement ¶ 14.

Cells 7 and 8 are next to each other and share an enclosed dayroom. *Id.* ¶¶ 11, 12. A non-party, B.G.,[4] was housed in Cell 8. *Id.* ¶ 13. Plaintiff contends that B.G. was designated as "CMC," which, according to Plaintiff, means that B.G. should have been housed separately from the general population. ECF No. 185-1 at 136:17–137:10. Plaintiff states that "[w]hen an inmate has that designation, it basically means he is separate from the general population." *Id.* at 137:5-7. However, Plaintiff does not state why he believes B.G. had this designation. Defendants dispute B.G.'s CMC status. ECF No. 194 ("Reply") at n.4.

Prior to October 22, 2020, Plaintiff and B.G. were housed in the same housing unit without incident. Although Plaintiff understood B.G. was part of a rival gang, Plaintiff was never involved in any altercation or fight with B.G. prior to his cell change.[5] ECF 192-1 at 183:1–4; 132:23. And, Plaintiff never requested a separation order from B.G.; Plaintiff, however, testified that on October 22, 2020, he told someone at DOC that he did not want to be placed next to B.G. *Id.* at 136:15–17; 138:15–23. Plaintiff claims that prior to October 22, such a request was "never an option." *Id*.

After being transferred to Cell 7, Plaintiff was secured inside the cell with the door closed. ECF No. 185-7.[6] Thereafter, the doors to Cell 7 and Cell 8 were opened at the same time.

---

[4] The full name of this non-party has been withheld pursuant to the sealing provisions of New York Criminal Procedure Law Section 160.50 and/or 160.55.

[5] Plaintiff is affiliated with the Trinitarios gang; B.G. is alleged to be affiliated with the Bloods gang. ECF Nos. 192-2 at DEF3390; 192-1 at 133:21–23, 132:23.

[6] "A district court deciding a summary judgment motion 'has broad discretion in choosing whether to admit evidence.'" *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)). Plaintiff

*Id.* A "bubble officer" is in charge of opening and closing cell doors. ECF No. 192-1 at 158:21–23; ECF No. 192-5 at 39:14–22. Typically, inmates must ask to be let out in order for their cell doors to open. ECF No. 192-4 at 38:3–23. The majority of cell doors are not open at the same time. *Id.* Plaintiff contends, however, that he did not request for his cell to be opened on October 22, 2020. ECF No. 192-1 at 158:24–25. Nonetheless, Defendant Collymore allegedly directed the bubble officer to open the doors to Cells 7 and 8. *Id.* at 158:10–15.

When the door to Cell 8 opened, B.G. was in his cell and bent to the ground, appearing to pick something up from the floor. ECF No. 185-7; ECF No. 185-1 at 159:21–160:10, 161:4–7. While B.G. was bent over, Plaintiff exited Cell 7, and attacked B.G. in Cell 8 by punching him. ECF No. 185-7; ECF No. 185-1 at 161:8–13; ECF No. 192-1 at 140:2–7. B.G. was not in "attack mode" when Plaintiff punched him. ECF No. 185-1 at 160:13–19. Plaintiff claims that the fight was "orchestrated" by Defendants, and he claims Defendant Masone told him it was known that Plaintiff and B.G. were not supposed to be in the same cell. ECF No. 192-1 at 183:5–20. Plaintiff further asserts that Defendant Masone had previously instructed Plaintiff to "shoot" B.G., promising that if Plaintiff attacked B.G., Plaintiff would be returned to general population. *Id.* at 12:8–12, 182:14–17. Plaintiff claims that when the cell doors were opened, he thought B.G. was playing sheep and pretending not to fight as a way to disarm Plaintiff. ECF No. 192-1 at 160:21–

---

contends that "Defendants improperly rely on video evidence outside of the time frame produced in discovery for Camera Angle 191.38." ECF No. 191 at n.3; *see also* ECF No. 193 at 7 ("Disputed that the cited camera footage supports the assertion because that footage has not been produced."). Plaintiff had an opportunity to respond to the video in their opposition briefing and raised no issues regarding reliability, authenticity, or admissibility. The Court therefore will consider the video. *See United States v. Abu-Jihaad*, 553 F. Supp. 2d 121, 128 (D. Conn. 2008).

25[7]; ECF No. 191 ("Opp.") at 8. After Plaintiff punched B.G., fighting ensued among the two. ECF No. 185-7.

After noticing the fight, floor officers unlocked the door to the dayroom shared by Cells 7 and 8. ECF 185-7. Once the officers gained entry to the day room, the officers used pepper spray to break up the fighting. ECF No. 185-8. It took officers around 20 seconds to respond to the fight. ECF No. 185-1 at 161:23–25. After the fight, Plaintiff and B.G. were escorted to the clinic to be decontaminated. ECF No. 185-1 at 145:13–25. Plaintiff states that he was taken to the clinic four hours after the fight and that there was no cause for such a delay. ECF No. 192-1 at 146:21–147:1.

At 4:04 p.m., the SOM sent an email stating that "maintenance ha[d] completed the issues that needed to be abated" in Cell 4. The email further stated that the materials needed to dry overnight, and Cell 4 would "be good by the morning." ECF No. 185-4 at DEF3349–DE3350. Later that evening, at 5:48 p.m., Captain Alleyne sent an email stating that, according to maintenance, Cell 4 would be ready the following morning, at which time Plaintiff was to be returned to Cell 4. *Id.* at DEF3348–DEF3349. Plaintiff claims that he was returned to Cell 4 that same night around sometime between 10:00 p.m. and 11:00 p.m. ECF No. 192-1 at 150:18–25. When Plaintiff returned to Cell 4, the issues Plaintiff had complained of were resolved and there was "nothing wrong with the cell" anymore. ECF No. 192-1 at 152:4–21.

## II.     Procedural History

Plaintiff filed the instant action on December 11, 2020, proceeding *pro se*. ECF No. 1 ("Compl."). On March 8, 2022, Plaintiff requested appointment of counsel, which was later

---

[7] The deposition testimony originally reads "playing cheap" though Plaintiff has corrected the language to read "playing sheep." *See* ECF No. 193 ¶ 32.

granted. ECF Nos. 83, 161. Pro bono counsel entered appearances on behalf of Plaintiff on October 19, 2023. ECF Nos. 169–171.

On March 1, 2024, Defendants moved for summary judgment on five claims: (1) failure to protect, (2) retaliation, (3) 18 U.S.C. § 242,[8] (4) conditions of confinement, (5) lack of personal involvement, and (6) federal municipal liability. ECF Nos. 184 ("Mot."), 188 ("Mem."). Defendants also argued that Defendants Morelli, Everson, Masone, and Harvey must be dismissed for lack of personal involvement. *Id.* On the same day, Defendants filed their own statement of material facts, and the parties submitted a joint statement pursuant to Local Civil Rule 56.1. ECF Nos. 186, 187. Plaintiff submitted his opposition on April 26, 2024. ECF No. 191. The same day, Plaintiff filed responses to Defendants' Rule 56.1 Statement. ECF No. 193. Defendants replied on May 17, 2024. ECF No. 194.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 322. If the movant meets her initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citation omitted). "A party may not rely on mere speculation or conjecture as to the true

---

[8] Plaintiff does not oppose Defendants' motion for summary judgment on his 18 U.S.C. § 242 claim. Opp. at 1 n.1. The Courts grants Defendants' motion on this ground.

nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation omitted).

When the movant properly supports her motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal citation omitted).

## DISCUSSION

First, the Court addresses Plaintiff's failure to protect and retaliation claims, finding that summary judgment is warranted with respect to both. The Court also considers municipal liability, finding the claim moot due to the Court's grant of summary judgment on Plaintiff's retaliation claim. The Court also considers Plaintiff's conditions of confinement claim, finding

that there are sufficient facts to support Plaintiff's conditions of confinement claim. The Court then considers and rejects Defendants' argument that they are entitled to qualified immunity on Plaintiff's conditions of confinement claim. The Court then turns to Defendants' affirmative defense that Plaintiff failed to exhaust his administrative remedies, finding that Defendants do not adequately assert the defense. Then, the Court addresses Defendants request that the Court dismiss certain Defendants, and dismisses Defendants Morelli, Everson, and Masone for lack of personal involvement. Lastly, the Court denies Plaintiff's attempt to assert claims not alleged in his complaint.

## I.     Plaintiff's Claims for Failure to Protect and Retaliation Fail

The Court sets forth the legal standard for Plaintiff's failure to protect and retaliation claims, determining that his failure to protect claim arises under the Fourteenth Amendment and his retaliation claim arises under the First Amendment. Applying the relevant standards, the Court finds that Defendants are entitled to summary judgment on both the failure to protect and retaliation claims.[9]

### A.   Failure to Protect

Plaintiff claims that Defendants failed to protect him by placing him in cell next to a known rival gang member. "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citation omitted). In certain circumstances, "[a]llowing an attack on an inmate to proceed without intervening is a constitutional violation." *Rosen v. City of New York*, 667 F. Supp. 2d 355, 360

---

[9] Defendants also argue that Plaintiff failed to exhaust available administrative remedies and that Defendants are entitled to qualified immunity. ECF No. 182 at 10–13, 16–17. Because the Court finds that summary judgment is warranted on other grounds, the Court declines to reach these arguments with respect to the failure to protect and retaliation claims.

(S.D.N.Y. 2009). Because Plaintiff was a pre-trial detainee at the time of the alleged failure to

protect, Plaintiff's claim arises under the Fourteenth Amendment. *See Darnell v. Pineiro*, 849

F.3d 17, 29 (2d Cir. 2017). To establish a Section 1983 failure-to-protect claim under the

Fourteenth Amendment, a pretrial detainee plaintiff must satisfy a two-prong test by showing: (1)

he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the

defendant-official "acted intentionally to impose the alleged condition, or recklessly failed to act

with reasonable care to mitigate the risk . . . even though the defendant-official knew, or should

have known, that the condition posed an excessive risk to health or safety." *McDaniel v. City of*

*New York*, No. 19-CV-8735 (KPF) (RWL), 2022 WL 1446541, at *7–8 (S.D.N.Y. Jan. 21,

2022), *report and recommendation adopted,* No. 19-CV-8735 (KPF) (RWL), 2022 WL 421122

(S.D.N.Y. Feb. 11, 2022) (quoting *Darnell*, 849 F.3d at 35).

Based on the undisputed evidence before the Court, Plaintiff cannot meet the first prong

of this test. This prong requires a substantial risk of harm that "must be, objectively, sufficiently

serious." *Lalonde v. City of Ogdensburg*, 662 F. Supp. 3d 289, 324 (N.D.N.Y. 2023) (citing

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). While substantial seriousness "is not subject to a

bright light test," the determination of what is substantial depends on the context of the inquiry.

*Lewis v. Siwicki*, 944 F.3d 427, 432 (2d Cir. 2019).

Courts in this district have found that a failure to protect claim cannot succeed where the

Plaintiff was the initial aggressor. *See Williams v. Salvucci,* No. 20-CV-5098 (CS), 2022 WL

17586326, at *9 (S.D.N.Y. Dec. 12, 2022)*. And the video evidence demonstrates that Plaintiff

was the initial aggressor in the fight with B.G. ECF No. 185-7. B.G. was bent over in his cell,

when Plaintiff attacked B.G. without warning. *Id.* Indeed, Plaintiff, as he must, admits to

throwing the first punch and initiating the altercation. ECF No. 185-1 at 159:18–160:19, 161:11–

10

13; ECF No. 192-1 at 139:23–25 ("Well, I wasn't going to wait or anything to happen to me, so as soon as the cell opened, we fought. I attacked him, to be honest.").

Plaintiff's attempts to explain away this evidence are without merit. Plaintiff argues that his actions were not unprovoked and that he acted in self-defense by initiating a fight with B.G. Opp. at 7–8. He claims Defendant Masone directed him to "shoot" B.G. and claims he suspected that B.G. had been instructed to do the same to him. *Id*. While "there is no question that instructing or encouraging other [inmates] to attack an inmate poses an objectively serious risk of harm" to the person who is attacked, *Smith v. Miller,* No. 15-CV-9561 (NSR), 2017 WL 4838322, at \*12 (S.D.N.Y. Oct. 23, 2017), the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *Jones v. Diaz*, No. 09-CV-2625 (SHS), 2011 WL 1202024, at \*2 (S.D.N.Y. Mar. 23, 2011) (citing *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)). Plaintiff fails to do so here. B.G. did not attack Plaintiff, and Plaintiff adduces no evidence beyond his own speculation that Defendant Masone instructed B.G. to harm Plaintiff. *See* ECF No. 192-1 at 182:20–21 ("I don't have any direct knowledge that they told him that, but I would assume that they did.").

Instead, Plaintiff initiated a fight against someone who was not in "attack mode," ECF No. 1-85 at 160:16–19, and now seeks to hold Defendants liable for failure to protect. However, "[a]n inmate's own violent tendencies are not the type of 'substantial risk of serious harm' protected by the Constitution." *Constant v. Prack*, No. 16-CV-03985 (PMH), 2022 WL 917528, at \*8 (S.D.N.Y. Mar. 29, 2022) (quoting *Louis-Charles v. Courtwright*, No. 11-CV-00147, 2014 WL 457951, at \*6 (N.D.N.Y. Feb. 4, 2014)).

Furthermore, Plaintiff adduces no evidence that B.G. otherwise posed a risk of serious harm to Plaintiff, other than the fact that B.G. was affiliated with a different gang. Plaintiff had no previous altercations with B.G., despite the fact that they were in the same housing unit. ECF No. 185-1 at 131:12–14, 135:18–20. And Plaintiff presented no evidence that he had any previous altercations with other members of B.G.'s gang. *Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-3524 (PMH), 2021 WL 243066, at *3 (S.D.N.Y. Jan. 25, 2021), *judgment entered,* No. 19-CV-3524 (PMH), 2021 WL 242878 (S.D.N.Y. Jan. 25, 2021) (finding that Plaintiff failed to satisfy the objective prong of a Fourteenth Amendment failure to protect claim where "there was no prior altercation between Plaintiff and [the non-party inmate], and Plaintiff made no request for protection."); *cf. Mays v. Falu*, No. 18-CV-6145 (KMK), 2019 WL 6619330, at *7 (S.D.N.Y. Dec. 5, 2019) ("Courts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker.") (cleaned up). Therefore, Plaintiff fails to demonstrate that there is a genuine issue of material fact with respect to the objective prong of the failure to protect claim.

"Because Plaintiff's Fourteenth Amendment failure to protect claim fails to satisfy the objective prong of the failure to protect test, the Court need not and does not address whether Plaintiff can satisfy the second prong of the test . . . ." *Delaney*, 2021 WL 243066 at *3, n.2 (S.D.N.Y. Jan. 25, 2021). Accordingly, the Court GRANTS Defendants' motion with respect to Plaintiff's failure to protect claim.

### B. Retaliation

Plaintiff next claims that because of his complaints about the conditions of his cell, he was placed in a cell next to B.G. in retaliation for his complaint. "Claims of retaliation fall within

the protections of the First Amendment." *Ahlers v. Nowicki*, No. 12-CV-0539 (DNH), 2014 WL 1056935, at *3 (N.D.N.Y. Mar. 18, 2014). To establish a First Amendment retaliation claim, "a prisoner must show '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015). The parties do not dispute that the first prong is met here. *See* Mem. at 14; Opp. at 14. Indeed, "[i]t is well settled that the filing of a prison grievance is a protected activity." *Mateo v. Fischer,* 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010). However, Plaintiff cannot demonstrate the second or third prongs.

The second prong requires an adverse action taken by Defendants against Plaintiff. "In the prison context, 'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" *Ramrattan v. Fischer*, No. 13-CV-890 (KPF), 2015 WL 3604242, at *12 (S.D.N.Y. June 9, 2015) (quoting *Wrobel v. County of Erie,* 692 F.3d 22, 31 (2d Cir. 2012)). "'Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection.'" *Id.* (quoting *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003)). "The adverse action inquiry is a contextual one." *Mateo* , 682 F. Supp. 2d at 433. Consistent with Second Circuit precedent, courts approach certain retaliation claims with skepticism, particularly where they are "based upon [ ] wholly conclusory assertions[s] that Defendant[s] acted with retaliatory animus." *Rahim v. Martin*, No. 23-CV-298 (MPS), 2023 WL 4745536, at *5 (D. Conn. July 25, 2023); *see also Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).

Here, Defendants' transfer of Plaintiff to another cell so that they could respond to Plaintiff's grievance request is not an adverse action. Captain Duncan-Chandler and Captain Dillard testified that to fix the issues Plaintiff complained of in his cell, he needed to be removed from his cell. ECF No. 185-3 at 88:21–25, 89:8–10; ECF No. 185-6 at 84:24–25; *see also* ECF No. 185-4 at DEF3353. Plaintiff does not dispute that he had to be transferred in order for Defendants to address Plaintiff's complaint about the conditions in his cell. The fact that he was moved to a cell next to B.G. is also not adverse for all the reasons stated above in Section I.B. In other words, this conduct is not indicative of adverse action, but indicative of Defendants being responsive to Plaintiff's legitimate requests. It also demonstrates that Defendants had a clear, non-retaliatory reason to move Plaintiff to another cell. *See Chavis v. Goord*, 333 F. App'x 641, 644 (2d Cir. 2009) ("[D]efendants were entitled to summary judgment because there were non-retaliatory reasons for their conduct."); *Roseboro v. Gillespie,* 791 F. Supp. 2d 353, 372 (S.D.N.Y. 2011) (granting Defendant summary judgment where Defendant "provided a non-retaliatory basis" for the action complained of). No reasonable jury could find otherwise. Therefore, Plaintiff's First Amendment claim fails.

## II.    Plaintiff's Claim Against the City Is Moot

Plaintiff's claim against the City "is based on DOC's failure to train its employees not to retaliate against inmates who file grievances." Opp. at 24; Compl. at 6. "To hold a municipality liable under Section 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) the existence of an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Holden v. Port Auth. of New York & New Jersey*, 521 F. Supp. 3d 415, 426 (S.D.N.Y. 2021).

Plaintiff's claim against the City is premised on Defendants' alleged retaliation. Because Plaintiff has failed to demonstrate that he was denied this constitutional right (*see* Section I.(B)), his claim against the City must also fail. *See Osuna v. City of New York*, No. 08-CV-4759 (JSR), 2009 WL 2356424, at *7 (S.D.N.Y. July 30, 2009) ("[B]ecause plaintiff has failed to show that [individual officer defendants] committed any violations, plaintiff's corresponding [municipal liability] causes of action against the City are rendered moot."); *Khan v. Ryan*, 145 F. Supp. 2d 280, 285 (E.D.N.Y. 2001) ("If there is no underlying constitutional violation by a municipal official, the municipality is not liable [on a *Monell* claim]"). The Court, therefore, grants summary judgment in the City's favor.

## III.    Plaintiff Sufficiently Pleads His Conditions of Confinement Claim

A state "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Under the Due Process Clause of the Fourteenth Amendment, arrestees have a right to be free from deliberate indifference to unconstitutional conditions of confinement. *Zeng v. Chell*, No. 19-CV-3218 (JGK), 2022 WL 624873, at *7 (S.D.N.Y. Mar. 1, 2022).

The detainee must satisfy the same two prongs as required to plead a failure to protect claim. *Darnell*, 849 F.3d at 29. "First, a plaintiff must satisfy the 'objective prong' establishing 'that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process.'" *Butler v. Suffolk Cnty.*, No. 11-CV-2602 (JS) (ST), 2023 WL 5096218, at *31 (E.D.N.Y. Aug. 9, 2023) (quoting *Darnell*, 849 F.3d at 29). The objective prong "is analyzed by the Court the same way under the Eighth or Fourteenth Amendment." *Smith v. Westchester Cnty.*, No. 19-CV-03605 (NSR), 2021 WL 2856515, at *7 (S.D.N.Y. July 7, 2021).

"There is no static test to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30 (cleaned up). "In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney,* 509 U.S. 25, 36 (1993).

"Second, a detainee-plaintiff must satisfy the 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Butler*, 2023 WL 5096218, at *31 (quoting *Darnell,* 849 F.3d at 29) (cleaned up). "[W]hen analyzed under the Fourteenth Amendment, deliberate indifference, and thus reckless[ness], is defined objectively: the pretrial detainee must allege that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (citing *Darnell*, 849 F.3d at 30, 35) (internal quotation marks omitted).

Plaintiff claims that he "lived in a mice infested cell with an active gas leak for over a month, causing [him] to experience headaches and dizziness." Opp. at 18. Plaintiff states that from the first day Plaintiff was placed in Cell 4, the leak smelled like "a car leaking gas fluid from the pipe," his "commissary food was being eaten by mice," and "feces and [] mice [] were coming in and out of [his] cell." ECF No. 192-1 at 120:21–121:4, 117:1–8. On his first day there, Plaintiff complained verbally, and continued to do so for around two weeks. *Id.* at 117:14–118:2. He asserts that in total, he made 100 verbal complaints and five 311 complaints. *Id.* at 118:4–8. Plaintiff describes the conditions as "hell" and something he "couldn't take [] anymore." ECF

No. 192-1 at 117:3, 118:2. Despite this, Plaintiff claims that "[h]is repeated complaints about his cell not only went unaddressed but were met with antagonization and retaliation by Defendants." Opp. at 18.

Defendants assert that it is "'well-established' law 'that headaches, even serious ones coupled with other symptoms,' do not constitute a sufficiently serious condition in this context." Reply at 6. This Court disagrees. In order to satisfy this claim, the "condition" the court must find sufficiently serious is not Plaintiff's medical symptoms; it is the condition of Plaintiff's confinement itself. *Edwards v. Arocho*, No. 22-585 (PR), 2024 WL 5244996, at *8 (2d Cir. Dec. 30, 2024) ("As we have explained, the proper lens through which to analyze allegedly unconstitutional unsanitary conditions of confinement is with reference to their severity and duration, not the detainee's resulting injury.") (internal citation and quotation marks omitted). Additionally, the Court is required "to consider 'conditions of confinement *cases*' on a 'case-by-case basis' without using 'bright-line durational or severity limits.'" *Brennan v. City of New York*, No. 19-CV-02054 (NGG), 2023 WL 5672590, at *5 (E.D.N.Y. Sept. 1, 2023) (quoting *Darnell*, 849 F.3d at 31, 37–38).

"With respect to the rodents, courts have found that an inmate's exposure to rodents may rise to the level of an objective deprivation where a plaintiff alleges facts suggesting infestation." *Zander v. New York City Dep't of Correction-Warden of Otis Bantum Correction Ctr.*, No. 16-CV-725 (AMD) (ST), 2019 WL 7598660, at *5 (E.D.N.Y. Aug. 27, 2019), *report and recommendation adopted sub nom. Zander v. Warden, Otis Bantum Corr. Ctr.*, No. 16-CV-725 (ENV) (ST), 2019 WL 6317391 (E.D.N.Y. Nov. 26, 2019) (collecting cases); *see also Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (finding that allegations of rodent infestation at a correctional facility may rise to level of constitutional violation). With respect to the leak and

resultant smell, various courts have held that gaseous fumes or abhorrent smells can constitute unconstitutional conditions of confinement. *See, e.g.*, *Harold v. Tangipahoa Par. Sheriff Off.*, No. 20-CV-2220 (SM) (DPC), 2021 WL 2920513, at *13 (E.D. La. June 18, 2021), *report and recommendation adopted*, No. 20-CV-2220 (SM), 2021 WL 2911926 (E.D. La. July 12, 2021) (finding allegations of a "stench" which created "noxious fumes" to plausibly demonstrate "an environment that is counter to evolving standards of decency"); *Davis v. Hack,* No. 12-CV-181 (SNLJ), 2013 WL 197223, at *2 (E.D. Mo. Jan. 17, 2013) (finding noxious fumes coming from plaintiff's cell sufficient to state a claim for unconstitutional conditions of confinement); *Drumgo v. Markell*, No. 14-CV-113 (GMS), 2015 WL 452324, at *2-3 (D. Del. Jan. 30, 2015) (finding smell from a gas leak sufficient to establish unconstitutional conditions of confinement).

"Conditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Darnell*, 849 F.3d at 30 (internal citation and quotation marks omitted); *Butler*, 2023 WL 5096218, at *34 ("The Court need not view the conditions-of-confinement [] in isolation, but may aggregate them."). Courts in this district acknowledge that "prisoners may not be deprived of their basic human needs . . . and they may not be exposed to conditions that pose an unreasonable risk of serious damage to their future health." *Darnell*, 849 F.3d at 30 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)) (internal quotation marks omitted).

As such, the Court concludes that the evidence suggesting Plaintiff was forced to live in a prison cell with a mouse infestation and black grease which smelled of gas are sufficient to establish objective deprivation under the first prong. *See Edwards v. Arocho*, No. 22-585 (PR), 2024 WL 5244996, at *8 (2d Cir. Dec. 30, 2024) (finding, on a motion to dismiss, that plaintiff's

allegations that he was "compelled to live in a prison cell coated in black mold and overrun by vermin [was] enough to establish an objective deprivation that posed a serious health *risk*, which is all that [plaintiff] was required to allege under the objective prong of the constitutional test").

The subjective prong requires that Plaintiff demonstrate that "the defendants knew of and disregarded an excessive risk to inmate health or safety." *Williams v. Carbello*, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009). Plaintiff testified that he "complained about the cell to numerous staff for many weeks." ECF No. 192-1 at 12:17–18; 109:7–13. "Allegations by a plaintiff that he spoke directly with facility officers about unsafe conditions in his cell, but that, despite such complaints, the conditions remained unchanged, have been held sufficient to [satisfy] the subjective prong of a deliberate-indifference claim, at least as against those officers." *Van Hoven v. City of New York*, No. 16-CV-2080 (GBD) (DF), 2018 WL 5914858, at *12 (S.D.N.Y. Aug. 21, 2018), *report and recommendation adopted,* No. 16-CV-2080 (GBD) (DF), 2018 WL 4417842 (S.D.N.Y. Sept. 17, 2018). Therefore, there are sufficient facts to support Plaintiff's conditions of confinement claim.

## IV.    Genuine Issues of Material Fact Preclude Qualified Immunity

"Qualified immunity protects government officials 'from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits.'" *Farid v. Ellen*, 593 F.3d 233, 244 (2d Cir. 2010) (quoting *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995)). Qualified immunity does not shield government officials from liability when "(1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct." *Matzell v. Annucci*, 64 F.4th 425, 434 (2d Cir. 2023) (internal citation omitted). "A right is clearly established when 'the contours of the right are sufficiently clear that a reasonable

official would understand that what he is doing violates that right.'" *Id.* at 434 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"In determining if a right is clearly established, this Court looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (internal citation omitted). The Supreme Court has made clear that its precedent does not "require a case directly on point" but that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Qualified immunity protects a government actor if it was "objectively reasonable for him to believe that his behavior did not violate the [plaintiff's] clearly established constitutional rights" at the time of the challenged act. *Lennon v. Miller*, 66 F.3d 416, 418 (2d Cir. 1995).

"A defendant is entitled to summary judgment on qualified immunity grounds when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Id.* at 420 (cleaned up). It is well settled in the Second Circuit that a defendant's ability to rely on qualified immunity from liability is a question of law for the court to decide on summary judgment only when "the factual record is not in serious dispute." *Id.* at 421.

In this case, Plaintiff's constitutional right to "humane conditions of confinement" and to be free from conditions of confinement which pose "an excessive risk to inmate health or safety" was clearly established at the time of the underlying incidents. *Farmer*, 511 U.S. at 837; *see also*

*Helling v. McKinney*, 509 U.S. 25, 32 (1993) (holding that incarcerated individuals are entitled to basic human needs); *Gaston v. Coughlin*, 249 F.3d 156, 161, 165–66 (2d Cir. 2001) (holding that freezing temperatures, the constant presence of mice, and "human feces, urine, and sewage water" directly *outside* of a cell met the stricter Eighth Amendment objective prong); *Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017) (concluding that plaintiffs had adduced substantial evidence of "appalling conditions of confinement" where they established that they had been held in cells that, *inter alia*, were infested with mice). As discussed in the foregoing section, Plaintiff's constitutional right to humane conditions of confinement was clearly established at the time of the underlying incidents.

Here, Defendants assert that they addressed Plaintiff's cell conditions the day they learned of the issues, and therefore, "it was not clearly established that Defendants addressing Plaintiff's cell conditions the day they were learned of violates any clearly established law[.]" Mem. at 21. However, there is a factual dispute about when Defendants learned of the conditions in the cell. Captain Duncan-Chandler testified that prior to October 22, 2020, she had no personal knowledge that Plaintiff was complaining of a grease leak in his cell. ECF No. 185-3 at 87:19–88:7. Captain Dillard testified that they were not made aware of Plaintiff's complaint prior to October 22, 2020. ECF No. 185-6 at 52:15–18. ADW Harvey testified that they were not aware of and typically do not review complaints such as Plaintiff's. ECF No. 192-4 at 49:9–18. There is no testimony of Defendants Morelli, Everson, or Masone in the record.

By contrast, Plaintiff contends that he made complaints about the conditions of his cell for over a month, and "even after he called 311 on October 18, it still took Defendants four days to address the conditions." Opp. at 21–22. He states that he "complained about the cell to numerous staff for many weeks" including complaints to Captain Duncan-Chandler "throughout

[the] whole month." ECF No. 192-1 at 12:17–18, 109:7–8. Plaintiff asserts that he made 100

verbal complaints and five 311 complaints regarding his cell condition. *Id.* at 188:4–8.

This factual dispute is not one the Court will resolve at this stage. Instead, "unresolved

factual issues are resolved by the jury before a court makes the final determination regarding

qualified immunity." *Walker v. Schult,* No. 11-CV-287 (LEK) (DJS), 2016 WL 4203536, at *14

(N.D.N.Y. Aug. 9, 2016); *see also Roland v. City of New York,* No. 19-CV-224 (PKC) (SJB),

2023 WL 2599649, at *7 (E.D.N.Y. Mar. 22, 2023) ("A reasonable jury could credit Plaintiff's

version of events; another could reject it as baseless. Conflicting versions of events, which find

support in the record, require denial of summary judgment."). "Indeed, a finding of qualified

immunity is appropriate when 'the only conclusion a rational jury could reach is that reasonable

officers would disagree about the legality of the defendants' conduct under the circumstances.'"

*Walker*, 2016 WL 4203536, at *14 (quoting *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir. 1995)).

Accordingly, the Court denies Defendants' motion with respect to Plaintiff's conditions

of confinement claim and on qualified immunity.

**V.    The PLRA Limits Plaintiff's Recovery of Compensatory Damages for His Conditions of Confinement Claim**

Defendants assert that the PLRA limits Plaintiff's recovery of damages here. Mem. at 21–

22. The PLRA clearly states that damages for mental or emotional injury cannot be recovered in

a case such as this. *See* 42 U.S.C. § 1997e(e). Plaintiff does not specify precisely what form of

compensatory damages he is seeking here, but he has not asserted any recoverable physical

injury stemming from the allegedly unlawful conditions of confinement. *See Edwards v. Horn*,

No. 10-CV-6194 (RJS) (JLC), 2012 WL 760172, at *22 (S.D.N.Y. Mar. 8, 2012) ("Because of

the PLRA's physical injury requirement, . . . recovery from [defendant] cannot include

compensatory damages."); *Abreu v. Nicholls*, No. 04-CV-7778 (RO) (GWG), 2011 WL 1044373,

at *3 (S.D.N.Y. Mar. 22, 2011), *report and recommendation adopted*, No. 04-CV-7778 (RO),

2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012) ("Numerous courts . . . have held that maladies . . .

including depression, headaches, insomnia, and dizziness, do not constitute a 'physical injury'

within the meaning of section 1997e(e) of the PLRA.") (collecting cases).

However, "the PLRA does not bar a prisoner from obtaining injunctive relief, declaratory

relief, nominal damages or punitive damages, even in the absence of a physical injury." *Diggs v.

City of New York,* No. 17-CV-1127 (VEC) (HBP), 2018 WL 5924413, at *4 (S.D.N.Y. Aug. 17,

2018), *report and recommendation adopted*, No. 17-CV-1127 (VEC), 2018 WL 4666073

(S.D.N.Y. Sept. 27, 2018) (citing *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002)). As

such, while the Court limits Plaintiff's recovery of compensatory damages on his conditions of

confinement claim under the PLRA, the Court declines to limit Plaintiff's recovery of nominal

damages at this stage. *See DiFolco v. MSNBC Cable L.L.C.*, 831 F. Supp. 2d 634, 644 (S.D.N.Y.

2011) (denying a motion for summary judgment with respect to limiting damages because "the

issue of whether to limit damages will depend, *inter alia*, on the jury's determination").

## VI.    Exhaustion of Administrative Remedies Under the PLRA Is Not Adequately Established

"According to the PLRA, no action shall be brought with respect to prison conditions

under 42 U.S.C. § 1983 by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." *Rucker v. Giffen*, 997 F.3d 88,

92 (2d Cir. 2021) (cleaned up) (quoting 42 U.S.C. § 1997e(a)); *see also Edwards v. Arocho,* No.

22-585 (PR), 2024 WL 5244996, at *4 (2d Cir. Dec. 30, 2024). "The PLRA requires 'proper

exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's

deadlines and other critical procedural rules.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 311

(2d Cir. 2020) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90– 91 (2006)). Proper exhaustion "means

using all steps that the agency holds out, and doing so *properly* . . . ." *Woodford*, 548 U.S. at 90 (emphasis in original). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007). Therefore, "a court may not excuse a failure to exhaust" administrative remedies. *Ross v. Blake*, 578 U.S. 632, 639 (2016). To exhaust administrative remedies under the PLRA, an incarcerated individual must "complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (quoting *Woodford*, 548 U.S. at 88).

Defendants contend that "Plaintiff's conditions of confinement claim is . . . barred by the PLRA because there is no evidence to show that Plaintiff exhausted the available administrative remedies prior to bringing forth this suit." Mem. at 20. But Defendants do not explain why that is the case, and they bear the burden of establishing this affirmative defense. *Williams v. Correction Officer Priatno*, 829 F.3d 118, 126 n.6 (2d Cir. 2016) ("[D]efendants bear the initial burden of establishing the affirmative defense of non-exhaustion."). They acknowledge that Plaintiff filed a grievance through the 311 Complaint. They do not, however, explain what Plaintiff was required to do thereafter pursuant to the Inmate Grievance Resolution Program. It is particularly unclear what they contend Plaintiff was required to do here, when all parties acknowledge that the issues with his cell were eventually remediated after he filed the 311 Complaint and before this suit. Because Defendants have failed to meet their burden to establish this affirmative defense, they are not entitled to summary judgment for Plaintiff's alleged failure to exhaust administrative requirements as required under the PRLA.

**VII.   Dismissal of Defendants Morelli, Everson, Masone Is Warranted; Defendant Harvey Remains**

The Court states the legal standard for personal involvement in a constitutional

deprivation and analyzes Plaintiff's claim with respect to Defendants Morelli, Everson, Masone,

and Harvey.

**A.  Legal Standard**

Defendants assert that "nothing in the record supports any relevant involvement of, and

certainly no unconstitutional violation committed by, Mr. Morelli, Officer Everson, Officer

Masone, and ADW Harvey," requiring their dismissal for lack of personal involvement. Mem. at

23. "'It is well settled in this circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite' to a section 1983 claim." *Delee v. Hannigan*, 729 F.

App'x 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Personal

involvement may be demonstrated through evidence that "(1) the defendant participated directly

in the alleged constitutional violation, (2) the defendant, after being informed of the violation

through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or

custom under which unconstitutional practices occurred, or allowed the continuance of such a

policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that unconstitutional acts were occurring."

*Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58

F.3d 865, 873 (2d Cir. 1995)).

**B.  Defendant Morelli**

Defendant Morelli was the SOM that inspected Plaintiff's cell on October 22, 2020. ECF

No. 185-3 at 88:18–25; ECF No. 187 at 2. Following inspection, Morelli informed Captain

25

Duncan-Chandler that Plaintiff needed to be removed from Cell 4 to complete maintenance repairs. ECF No. 185-3 at 88:24–25. On October 22, 2020, Morelli, on an email chain regarding Plaintiff's move, wrote that "the maintenance has been completed [on] the issues that needed to be abated." ECF No. 185-4 at DEF3349. Morelli further stated that the cell would be "good by the morning." *Id.* Plaintiff further claims that Morelli "knew that [C]ell 4 had been inoperable or five years but allowed Mr. Genao to live in that cell with a persistent gas leak and mice infestation for a month." Opp. at 23; ECF No. 192-1 at 173:20–174:3.

Plaintiff adduces no evidence that Morelli knew of the issues with Cell 4 prior to October 22, 2020, and the record is clear that upon inspection, Morelli promptly took action to remedy the issues. *See* ECF No. 185-4; ECF No. 185-1 at 152:8–153:1 (Plaintiff acknowledging that upon return to Cell 4 the issues were fixed and they did a "good job"). Thus, Plaintiff cannot demonstrate that Morelli was deliberately indifferent to Plaintiff's condition of confinement. *See Est. of King by & through King v. Annucci*, 693 F. Supp. 3d 310, 326–27 (N.D.N.Y. 2023) (finding that defendant "cannot be liable under the circumstances for deliberate indifference to a risk about which they were completely unaware"). Furthermore, Plaintiff's claim that Cell 4 was inoperable for five years is wholly conclusory. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact."). As such, Plaintiff presents no evidence sufficient to demonstrate that Defendant Morelli was personally liable for any of Plaintiff's claims.

### C.  Defendant Everson

Plaintiff asserts that Defendant "Everson's failure to ensure that [Plaintiff's] relocation followed OSIU procedure" implicates him in Plaintiff's failure to protect and First Amendment

claims. Opp. at 23. When asked in his deposition why Plaintiff is suing Defendant Everson, Plaintiff stated he has "seen the emails [and e]veryone on that email needs to get sued for deliberate indifference because they were all aware that me and this person were rival gang member[s.]" ECF No. 192-1 at 171:9–13. Because summary judgment is granted on the failure to protect claim and the First Amendment claim, this issue is moot. Because Defendant Everson is not implicated in the remaining claim, the Court dismisses Defendant Everson.

### D.  Defendant Masone

Plaintiff claims that Defendant Masone's conversations with Plaintiff "squarely implicate Masone in Defendants' retaliation scheme." Opp. at 23. Specifically, Plaintiff states that Masone "gave [Plaintiff] a deal stating if inmates are cut, [he] would go back to population and so [he] took a deal." ECF No. 192-1 at 174:7–9.  However, because summary judgment is granted on the retaliation claim, this issue is now moot. Given that Defendant Masone is not implicated in the remaining claim, the Court dismisses Defendant Masone.

### E.  Defendant Harvey

Plaintiff has adduced evidence that Defendant Harvey knew about, but was deliberately indifferent to, the allegedly unlivable conditions in Plaintiff's cell. Plaintiff maintains that he verbally complained to ADW Harvey regarding the conditions of his cell on Plaintiff's first day in the cell. ECF No. 192-1 at 117:14–21. He also complained to ADW Harvey on October 22, 2020. *Id.* at 118:25–119:2. Plaintiff further contends that on October 22, 2020, ADW Harvey told Plaintiff to stop making complaints because he was "driving him crazy with complaints." *Id.* at 168:22–169:7. Plaintiff's allegedly incessant complaints to Harvey about the condition of his cell suggests that Harvey "personally knew of and disregarded an excessive risk to [Plaintiff's] health or safety." *Tangreti v. Bachmann*, 983 F.3d 609, 619 (2d Cir. 2020). As such, a reasonable jury

27

could conclude that Defendant Harvey was personally involved in Plaintiff's conditions of confinement claim. *See id.*

## VIII.    Any Claim for Deliberate Indifference to Medical Needs Has Not Been Properly Asserted

Plaintiff asserts, in his Opposition, that "Defendants were deliberately indifferent to his medical needs in waiting four hours to take him to the clinic to be seen for his injures" and Plaintiff "will pursue this claim at trial." Opp at 5 n.4. Plaintiff did not allege a claim for deliberate indifference to medical needs in his Complaint, and a "party may not use his [] opposition to a dispositive motion as a means to amend the complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007); *see also Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998) (collecting cases). Accordingly, the Court does not consider this claim.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment on Plaintiff's claims is GRANTED as to his failure to protect, retaliation, 18 U.S.C. § 242, and municipal liability claims, and DENIED as to Plaintiff's conditions of confinement claim and Defendants' entitlement to qualified immunity on that claim. Defendants Morelli, Everson, and Masone are dismissed for lack of personal involvement. The Clerk of Court is respectfully directed to terminate ECF No. 184, to terminate Defendants Morelli, Everson, and Masone, and to correct Defendant DOC Assistant Deputy Warden Harris to Defendant DOC Assistant Deputy Warden Harvey.

Dated:  March 25, 2025
        New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

28